### UNITED STATES of America, ex rel., Oscar Ramon PUPO–TORDECILLA, A12 730 242, Relator,

v.

### Charles C. SAVA, as Acting District Director, of the Immigration Service for the District of New York, etc., Respondent.

### No. 89 Civ. 0263 (CSH).

United States District Court,
S.D. New York.

Jan. 20, 1989.

Lebenkoff & Coven, New York City, for relator; Jules E. Coven, Jeffrey E. Baron, of counsel.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for respondent; Noel Anne Ferris, of counsel.

### MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

Relator Oscar Ramon Pupo–Tordecilla petitioned this Court for a writ of habeas corpus to prevent respondent Charles Sava, the Acting District Director of the Immigration and Naturalization Service (INS) for the District of New York, from deporting relator to Colombia. Counsel for relator brought his application on by order to show cause on January 13, 1989, in view of relator's planned deportation later that day. After hearing counsel for the parties in chambers, I signed the writ, directed the filing and service of briefs, and set the case down for argument on January 19, 1989, staying the relator's deportation pending further order.

Counsel for the parties filed helpful briefs and made equally useful oral arguments. The Court now resolves the issues presented by the petition.

The facts are essentially undisputed. Relator, 31 years old, has been a lawful permanent resident of the United States since November 23, 1963. He is a citizen of Colombia, and until his arrest in these proceedings resided in Brooklyn, New York.

On September 17, 1985 relator was convicted in the United States District Court for the Eastern District of New York on a plea of violating the federal narcotics laws. He was sentenced to two years imprisonment, to be followed by a five-year term of special parole. On November 8, 1985 the INS issued to the relator an order to show cause and notice of hearing charging that he was subject to deportation based upon his criminal conviction for distributing a controlled substance, namely cocaine. Relator's deportation hearing began in Boston in March 1987. On March 31, 1987, relator appeared with counsel before an immigration judge, conceded the truth of the allegations set forth by the INS, conceded further that he was deportable as charged, and designated Colombia as the country of deportation.

Venue of the proceeding was then changed to New York, at relator's request. The hearing continued on August 19, 1987, at which time relator filed an application for a discretionary waiver of inadmissibility pursuant to section 212(c) of the Immigration and Nationality Act of 1952, 8 U.S.C. § 1182(c).

In a written decision dated October 24, 1988, Immigration Judge Sydney Rosenberg found relator deportable on the basis of his conviction and several concessions. Judge Rosenberg also rejected relator's application for a section 212(c) waiver, concluding that the relator had failed to sustain his burden of demonstrating that the circumstances merited that relief.

The INS served a copy of the immigration judge's decision upon the Rev. Robert Vitaglione, an authorized representative who had appeared for relator in the proceedings. That copy contained a notice that relator's time to appeal the judge's decision ran out on November 1, 1988. In point of fact, that notice was erroneous; the respondent concedes at bar that under the governing regulations, the deportation order did not become final until November 7, 1988. Reply Brief for Respondent at 3 fn. However, as respondent correctly points out, relator was not prejudiced by that apparent typographical error, since he did not file (through newly retained counsel) a notice of appeal with the Board of Immigration Appeals until January 12, 1989. Relator had been arrested by INS investigators on January 3, and detained since that date by the INS pending travel arrangements. Relator was booked on a flight for Colombia during the afternoon of January 13 when, during the morning of that day, counsel presented the instant writ in chambers.

The present posture before the Board of Immigration Appeals (BIA) is this. Relator has asked the BIA to entertain relator's appeal form the immigration judge's decision, "although apparently untimely." Brief for Relator at 7. Alternatively, relator asks his appeal to be certified by the BIA pursuant to 8 CFR § 3.1(c). In support of that alternative avenue to relief, relator cites *Matter of Chavarri–Alva*, 14 I & N Dec. 298, 300 (BIA 1973).

On January 12, relator accompanied the filing of his notice of appeal with an oral application to the BIA for a stay of deportation pending decision on the appeal. The BIA orally denied that application for a stay in the late afternoon of January 12, and confirmed the denial by letter on January 19.

### DISCUSSION

Resisting the petition, respondent cites familiar authority for the proposition that review of INS or BIA action in the district courts is highly limited. But those contentions do not squarely address the particular argument made by this relator.

The case for the relator is stated succinctly in his brief at 8:

Pursuant to 8 CFR § 3.6, the filing of an appeal of an immigration judge's initial decision ordering deportation stays the execution of the decision during the pendency of the appeal.

Relator has particular reference to § 3.6(a), which provides as follows:

Except as provided in § 242.2 of this chapter and paragraph (b) of this section, the decision in any proceeding under this chapter from which an appeal to the Board may be taken shall not be executed during the time allowed for the filing of an appeal unless a waiver of the right to appeal is filed, nor shall such decision be executed while an appeal is pending or while a case is before the Board by way of certification.

§ 3.6(a) excepts from its provisions matters dealt with in 8 CFR §§ 242.2 and 3.6(b). Those provisions deal with motions by aliens to reopen or reconsider adverse deportation rulings. Neither party characterizes the present proceeding as falling within these particular regulations. Accordingly the case turns upon the proper construction of § 3.6(a).

Relator argues, in essence, that as of the filing of his notice of appeal on January 12, 1989, he has "an appeal" that "is pending" within the proper construction of the penul-

timate phrase of § 3.6(a), providing: "nor shall such decision [to deport] be executed while an appeal is pending ..."

The respondent argues that this phrase cannot be read in isolation; rather, it is clarified and limited by the language preceding it, which says that a deportation decision "shall not be executed during the time allowed for the filing of an appeal ..." That is to say, in respondent's view the particular phrase upon which relator relies assumes the pendency of a timely filed appeal.

Relator responds that the BIA as demonstrated in the past its willingness to consider the merits of an untimely appeal. Given that ability and occasionally indulged inclination, relator argues, § 3.6(a) mandates a stay of execution of the deportation order whenever an appeal "is pending": even one apparently untimely under the regulations. The authority upon which relator places primary reliance is the BIA's decision in *Chavarri–Alva, supra.*

Given these arguments, I asked counsel during oral argument whether the time limit specified in the regulations for filing an appeal from an immigration judge's deportation order was jurisdictional, in the traditional sense that failure to file a timely appeal deprives the BIA of power to act. Understandably, relator resists that proposition. But respondent argues for it; and because I conclude that respondent is correct, this petition necessarily fails.

The governing regulations are found in 8 CFR §§ 242.21(a) and 243.1. § 242.21(a) provides:

> Pursuant to Part 3 of this chapter an appeal shall lie from a decision of a special inquiry officer under this part to the Board of Immigration Appeals. An appeal shall be taken within 10 days after the mailing of a written decision, or the stating of an oral decision, or the service of a summary decision on Form I–38 or Form I–39. The reasons for the appeal shall be stated briefly in the Notice of Appeal, Form I–290A; failure to do so may constitute a ground for dismissal of the appeal by the Board. When service of the decision is made by mail, as autho-

rized by this section, 3 days shall be added to the period prescribed for the taking of an appeal.

§ 243.1 provides:

> Except as otherwise required by section 242(c) of the Act for the specific purposes of that section, an order of deportation, including an alternate order of deportation coupled with an order of voluntary departure, made by the special inquiry officer in proceedings under Part 242 of this chapter shall become final upon dismissal of an appeal by the Board of Immigration Appeals, upon waiver of appeal, *or upon expiration of the time allotted for an appeal when no appeal is taken;* or, if such an order is issued by the Board or approved by the Board upon certification, it shall be final as of the date of the Board's decision. (emphasis added)

The regulatory scheme is crystal clear. Under § 242.21(a), an appeal "shall be taken within 10 days ..." The regulation is cast in mandatory terms; nor is this provision accompanied by any language giving the BIA discretion to excuse or forgive the requirement. The provision for timely filing differs in that regard from the provisions in the following sentence, which require that "reasons for the appeal shall be stated briefly in the Notice of Appeal," but goes on to say that "failure to do so may constitute a ground for dismissal of the appeal by the Board." In other words, the BIA has discretion to overlook omission of a statement of reasons for the appeal; but no such discretion exists in respect of an untimely filing. That regulatory intent is made manifest by § 243.1, which provides that a deportation order "shall become final," *inter alia*, "upon expiration of the time allotted for an appeal when no appeal is taken ..."

In the case at bar, I cannot read the particular phrase upon which relator relies in isolation. I cannot separate that phrase from the balance of § 3.6(a); nor can I separate § 3.6(a) from other pertinent regulations. Considering the regulatory scheme in its entirety, I agree with respondent that the stay of execution of deportation orders contained in § 3.6(a) assumes the existence of a pending *timely* appeal.

No timely appeal was filed in this case. Accordingly relator cannot summon § 3.6(a) to his assistance.

The BIA's decision in *Chavarri–Alva* does not change this analysis. The relator at bar fastens upon two particular sentences in the opinion. The first appears at 298, and characterizes the proceeding before the BIA as "an untimely appeal from an order of an immigration judge" finding an alien deportable. The second sentence appears at 300. It says, within the context of the timeliness of the appeal: "No explanation has been offered for the seeming delay." From these two strands relator's counsel weaves, with considerable ingenuity, a tapestry to the effect that the BIA considers untimely appeals on their merits if the untimely filing is satisfactorily explained. And, the relator concludes, he is prepared to demonstrate a satisfactory explanation, arising out of inadvertent failures of communication involving his then advisor, Father Vitaglione.

But the tapestry unravels upon closer examination of the BIA's opinion. It is apparent from the full text that the BIA chose to write at some length in *Chavarri–Alva* because it wished to chastise the appellate tactics pursued in a number of cases "by the same attorney," *id.* at 299. The BIA said by way of introduction: "We think it is high time to comment on the procedures involved, for the benefit of both this attorney and others newly embarked on an immigration practice." *Ibid.*

After dealing with various other aspects of the case, the BIA wrote this paragraph, in which the sentence highlighted by the relator appears:

This brings us to the notice of appeal itself. It is dated January 26, 1973, which would be within the time limit specified in 8 CFR 242.21. It was not filed, however, until March 2, 1973, when it was clearly out of time. No explanation has been offered for the seeming delay. If counsel was actually retained by the respondent by January 26, 1973 and prepared the notice of appeal on that date, we have reason (and perhaps so has the respondent) to wonder why counsel delayed filing until March 2, 1973, when it was too late by far. Another possibility is that counsel was not retained until later and that he back-dated the notice of appeal in an attempt to make it appear timely. Such an attempt at deception, though ineffectual, should not pass unnoticed. *Id.* at 300.

Thus it appears that the BIA's reference to no "explanation" having been offered for the alien's "delay" took place within the context of a case where the date on the notice of appeal was within the time limit, but the actual filing did not take place until the appeal "was clearly out of time." Arguably the timely date on the notice entitled the alien to a limited inquiry, or an opportunity to demonstrate, that the appeal was in fact timely, the problem having resulted from some wrongful act or failure to act on the part of agency personnel. In the case at bar, however, the date on relator's notice of appeal and its filing are equally untimely, and the question presented by *Chavarri–Alva* does not arise.

I recognize that the BIA's opinion goes on to reject the various points of appeal on their merits. *Id.* at 300–302. Again, however, the BIA indulged in that analysis in procedural contexts different from that at bar. First, the BIA considered in *Chavarri–Alva* whether it might be appropriate to permit the alien to move for reopening under § 242.22 to submit new evidence. The BIA decided not to remand the case to the immigration judge for that purpose, because the stated grounds of appeal showed that remand would serve no purpose. Secondly, the BIA considered the stated reasons in order to determine whether to take the case on certification under 8 CFR § 3.1(c), which provides in pertinent part that "the Board may in any case arising under paragraph (b) of this section require certification of such case to the Board." That is a discretionary power vested in the BIA. By rejecting the present relator's application for a stay of deportation, the BIA sends a clear enough signal that it is not inclined to exercise its discretion in relator's favor: a decision inappropriate for district court review.

The BIA's order in *Chavarri–Alva* says succinctly: "The appeal is dismissed for lack of jurisdiction as untimely." *Id.* at 302. That is the classic formulation of

timeliness as a function of jurisdiction. Concluding, as I must, that § 3.6(a) contemplates the pendency of a timely appeal, and no such appeal having been lodged in the case at bar, relator's basic premise fails.[1]

The Clerk of the Court is directed to dismiss the petition with prejudice. The restraining order previously entered is vacated as improvidently granted. If asked, I would deny a stay of this judgment pending appeal, and so relator must make any further application, if so advised, to the court of appeals. Rule 8(a), F.R.App.P.

SO ORDERED.

---

1. Relator cites other BIA decisions, but they are clearly inapposite. In *Matter of Escobar*, 14 I & N Dec. 412 (BIA 1983), the Board held that in computing the 10 days in which to take an appeal, the tenth day should be excluded if it is a Saturday, Sunday, or a legal holiday. That sensible interpretation does not assist me in this case. In *Matter of Gamboa*, 14 I & N 244 (BIA 1972), the Board criticized the District Director's action in not sending a notice of appeal to the Board, even where the District Director "believes the appeal is frivolous or is otherwise subject to summary dismissal," *id.* at 247. The case at bar is not complicated by any comparable intransigence on the part of the respondent.

Counsel for relator have also made known to this Court two earlier decisions, where the BIA squarely held that failure to file a timely notice of appeal with the 10–day period required dismissal of the appeal. *In the Matter of D___,* Int.Dec. E–25104 (BIA 1953); *In the Matter of G___Z___,* Int.Dec. E–065122 (BIA 1953). Counsel for respondent did not include these cases in the brief in opposition. Canon 7 of the Code of Professional Responsibility provides in its ethical considerations, at EC 7–23: "Where a lawyer knows of legal authority in the controlling jurisdiction directly adverse to the position of his client, he should inform the tribunal of its existence unless his adversary has done so; but, having made such disclosure, he may challenge its soundness in whole or in part." Counsel for the relator, in making these earlier decisions known to the Court, acted in the best tradition of professional ethics. Not all lawyers do so, and I commend counsel at bar, although for the reasons stated in text I am unable to accept counsel's argument that more recent BIA opinions depart from this rule in a fashion applicable to this case.